UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-718-JHM

BRENDA L. GREEN,                                                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                              Defendant.

## Memorandum Opinion and Order

Plaintiff Brenda Green ("Green") appeals the Commissioner's decision denying her application for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB"). (DN 10-2, #47.) For the reasons stated below, the Court **AFFIRMS** the Commissioner's decision.

## I. Statement of Facts

On November 18, 2013, Green filed an application for DIB and SSI. (DN 10-5, #300, 307.) The Commissioner denied her initial application and again upon reconsideration. (DN 10-3, #184, 217.) This was Green's second denial, as she had previously had an application for DIB and SSI denied following a hearing before an administrative law judge ("ALJ") on October 5, 2012. (*Id*. at #136.) Following the second denial, Green appeared before ALJ Candace A. McDaniel, who later issued an opinion denying Green's claim. (DN 10-2, #63.) In her written opinion, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since October 6, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

1

3. The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is allowed the option to sit or stand at 30 to 60 minutes intervals, taking no more than 1 to 3 minutes to change positions without leaving the workstation. She may not climb ladders, ropes, or scaffolds but she may occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. She is able to understand, remember, and carry out simple and routine tasks but she should not be in a job that requires stringent production quota or assembly line pacing tasks.

6. The claimant is capable of performing past relevant work as a parking lot attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 6, 2012, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

(*Id*. at 68–77.) The appeals council denied Green's request for review. (*Id*. at 47.)

## II. Standard of Review

The Social Security Act authorizes payment of DIB and SSI to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as follows:

> [An i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). When a claimant files an application for DIB, the claimant must establish that he or she became "disabled" prior to the date his or her insured status expired. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Steps two, three, four, and five are at issue here.

At step two, the ALJ determines if the claimant has a "severe" impairment, and it is the claimant's burden to demonstrate that she does. 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). To satisfy this burden, the claimant must show he or she suffers from a medically determinable physical or mental condition that satisfies the duration requirement, 20 C.F.R. §§404.1509, 416.909, and significantly limits his or her ability to do one or more basic work activities. 20 C.F.R. §§404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); SSR 96-3p; SSR 96-4p; *Higgs*, 880 F.2d at 863. Alternatively, the claimant must show he suffers from a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. §404.1520(a)(4)(ii) and (c).

At step three, the ALJ considers the severity of the claimant's impairment. 20 C.F.R. §404.1520(a)(4)(iii). If the claimant has an impairment that meets or equals one of the listed impairments, the claimant is disabled. *Id*. The listed impairments "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S.

3

521, 532 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. at 530 (internal quotation marks omitted).

At step four, the ALJ considers the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(f). RFC is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted). The claimant has the burden of proof during the first four steps. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). A claimant who cannot make an adjustment to other work is disabled. 20 C.F.R. § 404.1520(g)(1). Here, the burden shifts to the Commissioner to demonstrate that there are other jobs the claimant is capable of performing in the local area. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

The Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir.

4

1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

## III. Analysis

Green raises three issues with the Commissioner's decision. First, she argues that the ALJ erred when she did not find her lymphocytic colitis to be a "severe" condition for the purposes of her disability analysis. (DN 12, #1146.) Second, Green argues that the ALJ erred when she did not consider whether her lymphocytic colitis met or equaled Listing 5.06, the listing for inflammatory bowel disease ("IBD"). (*Id*. at 1447.) Third and finally, Green asserts that the ALJ's RFC analysis was not supported by substantial evidence because (1) the ALJ did not explain how the limitations assigned in her RFC would accommodate Green's stomach troubles, and (2) the ALJ improperly weighed the medical opinion evidence. The Court will examine each of Green's arguments in turn.

### A. "Severe" Lymphocytic Colitis

First, Green argues that the "severe impairment of lymphocytic colitis has been omitted without any narrative as to why it was not a severe impairment." (DN 12, #1446.) This is essentially the extent of Greens' argument, as she does not point to any evidence in the record that would support her assertion that her lymphocytic colitis was a "severe" condition as defined under the regulations.

At step two of the five step analysis, a condition will be deemed a "severe" impairment if it "significantly" limits a claimant's physical or mental ability to do basic work activities. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); 20 CFR §§404.1520(c), 404.1521(a). "Only

slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe." *Jones v. Comm'r of Soc. Sec.*, 142 F. Supp.3d 620, 628 (S.D. Ohio 2015) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)).  It is the claimant's burden to present evidence to establish the fact that she suffers from a severe impairment.  *Watters v. Comm'r of Soc. Sec. Admin.*, 530 Fed. App'x 419, 421 (6th Cir. 2013).

Here, the Court finds no reversible error in the ALJ's discussion – or lack thereof – of Green's lymphocytic colitis at Step 2.  In her opinion, the ALJ's makes a passing reference to Green's "gastrointestinal complaints," but then summarily dismisses them as not "severe."  (DN 10-2, #69.)  Later in her opinion during the RFC analysis, the ALJ does discuss Green's "stomach issues," including her subjective complaints and symptoms, objective medical evidence, and how she responded to medication and treatment.  (*Id*. at 73.)  But aside from the passing mention to Green's gastrointestinal problems, the ALJ does not discuss whether they are "severe" for the purposes of the Step 2 analysis.  Even if the ALJ's omission would constitute an error, it would not be a reversible error because she found Green to have the severe impairments of degenerative disc disease and degenerative joint disease.  (*Id*. at 69.)  *See, e.g., Anthony v. Astrue*, 266 Fed. App'x. 451, 457 (6th Cir. 2008); *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. App'x. 801, 803 (6th Cir. 2003) (holding that because the ALJ found the claimant to have at least one severe impairment at step two, it was of "little consequence" whether he found any other ailments to be severe); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (no reversible error when the ALJ found at least one of claimant's ailments to be "severe" and therefore continued with the sequential analysis).

After finding Green to have two severe impairments, the ALJ continued on with the sequential analysis. Therefore, the Court finds that the ALJ did not commit a reversible error in regards to her lack of discussion of whether Green's gastrointestinal problems were severe.

### B. ALJ's Determination that Green Did Not Meet Listing 5.06

Next, Green argues that the ALJ erred when she failed to discuss whether she met the requirements for Listing 5.06 – IBD. (DN 12, #1447.) Once again, this appears to be the extent of Green's argument, as she does little more than vaguely reference "multiple hospitalizations, emergency room visits[,] and doctor's office visits with abnormal laboratory tests" as evidence that she meets Listing 5.06. (*Id*.) Nor does she explain how the objective medical evidence she furnished upon the Commissioner demonstrates that she meets every required element of Listing 5.06. In her opinion, the ALJ expressly considered whether Green met the requirements of Listing 1.02 – major dysfunction of a joint and Listing 1.04 – disorders of the spine, eventually concluding that Green did not, but she did not explicitly address any of Green's gastrointestinal problems or Listing 5.06. (DN 10-2, #69–70.)

It is well-settled law that a claimant has the burden of proving that she meets every requirement of a listing. *King v. Sec'y of Health & Human Servs.*, 742 F. 2d 968, 974 (6th Cir. 1986). Although Green complains that the ALJ did not explicitly address whether she met Listing 5.06, there is no social security regulation or Sixth Circuit rule that requires the ALJ to address every listing that a claimant could possibly qualify for. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x. 426, 432 (6th Cir. 2014); *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. App'x. 639, 641 (6th Cir. 2013) (stating that the ALJ is not required to "discuss listings that the applicant clearly does not meet"). Instead, an ALJ should only discuss a relevant listing where

7

the record "raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson*, 579 Fed. App'x. at 432 (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). To raise the inference of a "substantial question," a claimant must "do more than point to evidence on which the ALJ could have based [her] finding." *Id*. (citing *Sheeks*, 544 Fed. App'x. at 641–42). Instead, the claimant must point to specific evidence that demonstrates he reasonable could be or equal every requirement of the listing. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001)).

Because the ALJ's opinion does not discuss Listing 5.06, the Court will now determine if the medical evidence in the record raises a substantial question as to Green's ability to meet the listing's requirements. *Smith-Johnson*, 579 Fed. App'x. at 433. The requirements for Listing 5.06 are as follows:

> Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
>
> A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6th month period
>
> OR
>
> B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6th month period:
>
> 1. Anemia with hemoglobin of less than 10 g/dL, present on at least two evaluations at least 60 days apart; or
>
> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or

3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

4. Perineal disease with a draining abscess or fistula, with pain that is not completed controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

5. Involuntary weight loss of at least 10 percent from baseline as computed in pounds, kilograms, or BMI, present on at least 60 days apart; or

6. Need for supplemental daily enteral nutrition via a gastronomy or daily parenteral nutrition via a central venous catheter.

20 CFR, Part 404, Subpart P, App. 1, § 5.06. Stated more simply, Green must meet the requirements of the capsule definition and then the criteria listed in either Section A or B. *King v. Sec'y of Health & Human Servs.*, 742 F. 2d 968, 974 (6th Cir. 1986).

The record indicates that Green had CAT scans of her abdomen in June 2015, August 2015, and February 2016, a colon biopsy in June 2015, an endoscopy in October 2015, and an x-ray of what appears to be her abdomen in January 2016. (DN 10-7, #811, 824, 887; DN 10-8, 1040, 1254, 1318.) This battery of medical imaging tests easily satisfies the capsule definition's requirement that Green demonstrate her ailment through proper medical tests. Turning to Section A's requirements, none of the aforementioned tests show any "obstruction of stenotic areas." In fact, many of the tests specifically report that there was no obstruction: June 2015 CAT scan ("[n]o obstructing etiology identified."); August 2015 CAT scan ("no bowel obstruction"); February 2016 CAT scan ("[n]o evidence of active bowel inflammation or obstruction."); January 2016 x-ray ("[n]o radiographic evidence to suggest obstruction."). (DN 10-8, #825, 887, 1040, 1321.) Moreover, Green does not even mention these medical imaging tests in her brief or their results save for a brief reference to "abnormal laboratory tests." (DN

9

12, #1447.) There is simply no evidence in the record that would indicate that Green could satisfy Section A's requirements.

An examination of the medical reports through the lens of Section B's requirements also leads to a similar result. As the Commissioner correctly notes, Green cannot satisfy elements (1) or (2) of Section B because there is no test report in the record that shows that she had "hemoglobin of less than 10 g/dL" or "serum albumin of 3.0 g/dL or less." (DN 17, #1476.) On the contrary, every test states that her hemoglobin levels were above 15 g/dL and her serum albumin levels above 3.8 g/dL. (DN 10-7, #795, 880, 926, 939, 942; DN 10-8, #978, 998, 1348, 1398, 1403.) Similarly, no physical examination reported that she had "tender abdominal mass," as required by element (3). Element (4) requires the presence of "perineal disease with a draining abscess or fistula" on at least two evaluations sixty days apart, but none of Green's medical records show any evidence of a single instance of a draining abscess or fistula, let alone two. In regards to element (5), while the medical reports indicate that Green's weight did fluctuate slightly, there was never a variation of at least 10% in the given timeframe, and certainly no evidence to suggest that the weight fluctuations were involuntary. (DN 10-7, #928; DN 10-8, #1005, 1217, 1338, 1344, 1429.) Similarly, there is no evidence that Green was ever prescribed any medication for "supplemental daily enteral nutrition," as required by element (6).

A review of the objective medical evidence cannot even establish one of the six prongs of Section B, let alone two – the minimum requirement for meeting Listing 5.06. Therefore, the Court finds that Green's medical record does not raise a substantial question about whether she could qualify for Listing 5.06, and as such, the ALJ did not err when she did not explicitly discuss that listing at Step 3.

## C. The ALJ Did Not Factor Lymphocytic Colitis into RFC Analysis

Green's next two arguments concern the ALJ's RFC analysis at Step 4 of the sequential evaluation. First, she appears to argue generally that the ALJ did not appropriately factor her lymphocytic colitis into the RFC restrictions. (DN 12, #1448.) In the RFC analysis, the ALJ discussed – at length – Green's stomach ailments and limited her to "simple and routine tasks away from fast paced assembly or quota work" because of them. (DN 10-2, #73.) Green, however, states that there is "no explanation of the nexus between the colitis flare-ups and fast paced work." (DN 12, #1448.) Green appears to be arguing that the ALJ should have imposed greater restrictions on her ability to work because of her lymphocytic colitis, although the Court must guess because her written submission does little more than summarize her medical records and then claim the ALJ's RFC analysis does not comport with them.

The RFC analysis is meant to "describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from," although those maladies are not irrelevant in the FC analysis. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Once again, it is the claimant's burden to prove her RFC. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); 20 C.F.R. § 416.945(a)(3).

The Court finds that substantial evidence supports the ALJ's RFC restrictions concerning Green's lymphocytic colitis. As stated above, the ALJ accurately summarized Green's "stomach issues," including her testimony at the administrative hearing and the medical imaging records the Court discussed in the previous section. (DN 10-2, #73.) The ALJ also noted how Green's medication "fairly controlled" her complaints of pain and frequent bathroom-usage. (*Id*.) Although Green asserts that the ALJ's RFC findings would not account for her complained-of

abdominal pain, the medical records that the ALJ relied on reflect that following her February 2016 CAT scan, her abdominal pain was, at the worst, "mild," and she reported about normal bowel functions. (DN 10-8, #1368.) It was therefore reasonable for the ALJ to conclude that Green's stomach issues had improved from her earlier complaints of severe pain and constant disruption. (DN 10-2, #73.) The ALJ's restrictions based on Green's improvement (no fast paced quota or assembly line work) would allow her to use the restroom at her own pace, as needed, without the stressors or pressure that time-sensitive tasks bring.

Therefore, the Court finds that substantial evidence supports the ALJ's RFC analysis regarding Green's stomach ailments.

### D. The ALJ's Treatment of Medical Opinions

Green's final argument asserts that the ALJ erred by not assigning the correct weight to a number of medical opinions. Specifically, Green argues that the ALJ assigned too little weight to the opinion of Dr. Jeffery Fadel, the consultative orthopedic surgeon, too little weight to the opinion of Dr. Brent Duncan, the treating physician, and too little weight to the opinion of Dee Ann Totten, RN. (DN 12, #1450–52.) Essentially, she accuses the ALJ of cherry-picking the medical evidence that supports a finding of "not disabled" as opposed to the medical evidence that supports a finding of "disabled." (*Id*. at 1451.)

Under the regulations, there are three categories of medical opinions: treating, examining, and non-examining sources. 20 CFR §404.1502. A physician is considered a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502). It is well-established that

"the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, she is required to:

> [A]pply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c), 416.927(c). These factors are the "good reasons" that the ALJ must apply. *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011). Even though the ALJ must articulate "good reasons," she is not required to explicitly recite the regulation factors as long as his explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008).

Substantial evidence supports the ALJ's decision to assign little weight to Dr. Duncan's opinion. Dr. Duncan had opined that Green could only lift and carry less than ten pounds occasionally and frequently, stand and walk for less than two hours a day, sit less than six hours a day, and never perform any postural activities. (DN 10-7, #677–680.) But as the ALJ noted, his extreme limitations (Dr. Duncan limited Green in every category on the questionnaire, except for sensory limitations, to the maximum extent possible) do not comport with the Green's objective medical records. (DN 10-2, #74.) For instance, the ALJ points out that Dr. Duncan opined that Green cannot "tolerate dust or pulmonary irritants secondary to allergies," but Green

13

had not received any substantial treatment for allergies. (*Id.*) Along the same lines, Dr. Duncan imposed significant limitations on Green's upper extremities, but the medical imaging records did not reveal anything other than "minimal findings." (*Id.*) The ALJ concluded that Dr. Duncan's expressed limitations appeared to be based on Green's unverified, subjective complaints, and were not reflected in the medical evidence available to the ALJ. (*Id*. at 74–75.) Green's allegations of cherry-picking are similarly unpersuasive, as she engages in the same sort of behavior she accuses the ALJ of. *White v. Comm'r of Soc. Sec.*, 572 F. 3d 272, 284 (6th Cir. 2009). *See also Smith v. Comm'r of Soc. Sec.*, 2015 WL 7460080 (W.D. Mich. Nov. 24, 2015) at *3 ("The argument that the ALJ mischaracterized or 'cherry-picked' the record is frequently made and seldom successful"). The ALJ's explanation for not accepting Dr. Duncan's medical opinion as controlling reflects several of the "good reasons," namely the supportability of the opinion and the consistency of the opinion with the record as a whole.

As such, substantial evidence supports the ALJ's analysis concerning Dr. Duncan's opinion. *See Swain v. Comm'r of Soc. Sec.*, 379 Fed. App'x. 512, 517 (6th Cir. 2010) (holding that the ALJ gave good reasons for not giving a treating physician's opinion controlling when he stated that they were based on the claimant's own subjective accounts and inconsistent with the other medical records).

The ALJ's evaluation of Dr. Fadel's opinion as being worthy of "limited weight" is valid for similar reasons. (DN 10-2, #74.) As the Commissioner notes, as a consultative examiner, Dr. Fadel's opinion is not automatically entitled to controlling weight. *Ealy v. Comm'r of Soc. Sec.*, 594 F. 3d 504, 514 (6th Cir. 2010); 20 CFR §404.1527(c)(2). In his opinion, Dr. Fadel appears to admit that he does not have sufficient medical records before him; indeed, he states

14

that "I have some medical records, but they are unrelated to her back." (DN 10-7, #657.) Nevertheless, he concludes that she has "possible degenerative lumbar disc disease" and "probable canal stenosis of the lumbar spine," even though his examination did not show "any significant disabling neurological findings." (*Id.*) Based on Dr. Fadel's admissions, the ALJ assigned little weight to his recommendations because it appeared that his limitations were again premised on Green's subjective complaints, rather than any medical imaging records. (DN 10-2, #74.) In addition, she assigned little weight to his opinion that Green had "probable canal stenosis of the lumbar spine" because it was conclusory and not premised on any objective studies or physical findings. (*Id.*) Once again, these "good reasons" are more than sufficient, and they are supported by substantial evidence.

Finally, the Court finds that substantial evidence supports the ALJ's treatment of Nurse Totten's opinion as an examining source. As a preliminary matter, under the old regulations that govern this case, the opinion of a registered nurse is not an "acceptable medical source," and nurse opinions are judged on a case-by-case basis. SSR 06-03p; 20 CFR §404.1527(a)(2). Nurse Totten opined that Green could not lift more than ten pounds or bend, stoop, sit for prolonged periods, or engaged in strenuous activity. (DN 10-8, #1203.) But as the ALJ noted, the circumstances of Green's visit to the hospital at the University of Louisville cast substantial doubt on Nurse Totten's opinion, chiefly that (1) it came around a month after Green was in a car accident, and (2) she was eventually diagnosed, at the same hospital visit, with only a lumbar strain and neck pain. (DN 10-2, #75.) These factors were acceptable reasons for the ALJ to provide little weight to Nurse Totten's opinion, as was the fact that Green's motor and sensory examinations at said hospital visit were normal. (*Id.*)

## IV. Conclusion

For the reasons stated above, the Court **AFFIRMS** the Commissioner's decision. The Court will enter a separate order of judgment in accordance with this opinion.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

March 29, 2018

cc: Counsel of record